MILTON GOTTESMAN *v.* AETNA INSURANCE COMPANY
ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, LONGO and PETERS, Js.

Argued April 3—decision released June 12, 1979

*William J. Nulsen,* for the appellant (plaintiff).

*Milton Gottesman,* pro se, the appellant (plaintiff).

*Edward M. Sheehy,* for the appellee (defendant Continental Casualty Company).

LONGO, J. This is an appeal from a judgment of the Superior Court which granted the defendant Continental Casualty Company's (Continental) motion for a directed verdict. The court denied the plaintiff's motion to set aside the verdict, and found the issues in favor of the defendant Continental.

The facts as outlined in the parties' briefs are essentially undisputed. The plaintiff, Milton Gottesman, was the owner of property located on Boston Avenue, Bridgeport, Connecticut, which he had previously occupied and used as a meat market. In 1969, the plaintiff had installed a walk-in freezer and cooler unit which were not attached to the building and which were utilized for the storage of meats. The plaintiff leased the premises to Salino Bros., Inc., which obtained a policy of insurance on the contents of the building from the defendant Continental, naming the plaintiff as an additional insured.[1] On June 6, 1970, a fire occurred at the plaintiff's building causing damage to, inter alia, walk-in coolers and refrigeration equipment. At the time of the damage by fire the plaintiff maintained a policy of insurance on the building and contents with the defendant Aetna Insurance Company (Aetna), and a policy with the defendant Maryland Casualty Company (Maryland). Both policies insured the plaintiff's building and contents against risk of damage by fire. The plaintiff testified that he never read any part of the insurance policies other than the face sheets.

The plaintiff made demand upon Continental under its policy for payment of the value of the walk-in cooler and freezer unit. Upon Continental's

---

[1] Salino Bros., Inc., was not a party to the suit instituted by the plaintiff.

refusal to honor the policy, the plaintiff instituted the present action in three counts against Aetna, Maryland and Continental. Continental pleaded five special defenses, claiming, inter alia, that under the Aetna and Maryland policies the plaintiff had been paid $18,312.66 for the damages to the plaintiff's building, and $10,280 for the specific damages to the walk-in cooler and refrigeration equipment appurtenant to the coolers, in full satisfaction of the plaintiff's claim. At the conclusion of the evidence presented to the jury, Continental moved for a directed verdict, which the court granted, deciding that the cooler and freezer were more specifically insured under the Aetna and Maryland policies, thus exonerating Continental from liability for the damaged equipment. Dispositive of this appeal is the special defense filed by Continental alleging that the plaintiff's claim for damages to the walk-in cooler and freezer could not be pursued against Continental, since coolers and refrigeration equipment were "more specifically insured" in whole or in part under the contracts of insurance issued by the Aetna and Maryland insurance companies, and thus excluded from coverage under the terms of the Continental policy.

Continental's policy contained the following provision: "Property Not Covered: In addition to the kinds of property which are otherwise excluded or limited under this policy, the following are also excluded from coverage under this form: . . . 7. Property which is more specifically insured in whole or in part under this or any other contract of insurance." The insurance policies of both Aetna and Maryland are identical and provide as follows: "Building Coverage: When the insurance under this policy covers building(s), such insurance shall

include . . . all permanent fixtures, machinery and equipment forming a part of and pertaining to the service of the building; . . . personal property of the Insured as landlord used for the maintenance or service of the described building(s), and including fire extinguishing apparatus, floor coverings, *refrigerating,* ventilating, cooking, dishwashing and laundering *equipment.*" (Emphasis added.) Notwithstanding the language of the policies above, the plaintiff contends that the Aetna and Maryland policies do not embrace the walk-in cooler and freezer as a matter of law and, therefore, that the court erred in construing the legal effect of the Continental policy when it granted the defendant's motion for a directed verdict. We do not agree. A verdict may properly be directed where the decisive question is one of law. *Rich* v. *Dixon,* 153 Conn. 52, 61–62, 212 A.2d 417 (1965); *Sedita* v. *Steinberg,* 105 Conn. 1, 5, 134 A. 243 (1926). The direction of the verdict is the only assignment to be considered upon an appeal from a directed verdict. *Green* v. *Brown,* 100 Conn. 274, 276, 123 A. 435 (1924). It is the function of the court to construe the provisions of the contract of insurance. *Libero* v. *Lumbermens Mutual Casualty Co.,* 143 Conn. 269, 274, 121 A.2d 622 (1956). If the language used is plain and unambiguous, it must be given its natural and ordinary meaning; *Smedley Co.* v. *Employers Mutual Liability Ins. Co.,* 143 Conn. 510, 513, 123 A.2d 755 (1956); and, in a dispute of this nature, an insurance policy must be interpreted and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy. *Lyon* v. *Aetna Casualty & Surety Co.,* 140 Conn. 304, 307, 99 A.2d 141 (1953).

The plaintiff offered the testimony of an expert witness who concluded that the language of the Maryland and Aetna policies was susceptible of two or more meanings, claiming that terms such as "permanent fixtures," and "pertaining to the service of the building," as used in the Maryland and Aetna policies, are technical or trade terms of questionable meaning, and, as such, the meanings are a question of fact for the jury. The refrigeration equipment and cooler were purchased in 1969 by the plaintiff to provide refrigeration for the meat products which he sold in connection with the operation of his meat market business. The record is devoid of any reference to other use or uses of the refrigeration equipment on the premises, such as air conditioning.

The plaintiff claims that the court erroneously construed the legal effect of the Continental contract of insurance in deciding that the walk-in cooler and freezer were more specifically insured by the policies of Aetna and Maryland. The plaintiff argues that the policies did not separately and specifically describe or point out the cooler and freezer but only described the class or kind of article they covered. As we initially indicated, the pertinent and identical language of the Aetna and Maryland policies specifically included within "Building Coverage" all "fixtures, machinery and equipment . . . including . . . refrigerating . . . equipment." As was stated in *Hartford Steam Boiler Inspection & Ins. Co.* v. *Firemen's Mutual Ins. Co.*, 110 Conn. 332, 337, 148 A. 135 (1930): "A policy which singles out for particular insurance a certain article, or property of a restricted class, falling within the general description contained in a blanket policy covering all of the property of the insured as to the same risk, or a policy which, although its coverage taken

as a whole is general in its terms, by certain provisions selects and affords discriminating protection to a certain article or specified items of property regarding a particular risk (as against loss by fire) against which the blanket policy protects all of the property of the insured, is to be regarded as specifically insuring the article or property so designated and specifically protected." To be specifically insured, moreover, it is only necessary that the refrigerating equipment should be distinguished from the other kinds of equipment as, for example, heating, water or electrical equipment. Id., 338; see *Fairchild* v. *Liverpool & London Fire & Life Ins. Co.,* 51 N.Y. 65, 68 (1872); *Kimball Bros. Co.* v. *Palatine Ins. Co.,* 197 Iowa 598, 195 N.W. 987 (1923); *Hough, Clendening & Co.* v. *Peoples Fire Ins. Co.,* 36 Md. 398, 429 (1872). In the present case, both the Aetna and Maryland policies single out "refrigerating . . . equipment" and afford protection to it. The policies can, therefore, be regarded as a matter of law to insure specifically the refrigerating equipment as designated in the policies. In contrast, Continental's policy explicitly excluded "[p]roperty which is more specifically insured in whole or in part under this or any other contract of insurance." The clear intent and understanding of the parties to the Continental contract, to which we must give effect; *Downs* v. *National Casualty Co.,* 146 Conn. 490, 494, 152 A.2d 316 (1959); must be construed in the manner asserted by Continental to exclude coverage for loss caused by fire to any equipment specifically designated as insured in any other policy or policies, such as those of Aetna and Maryland.

The plaintiff finally claims that in granting the defendant's motion for a directed verdict, the court

went beyond the mere interpretation of the contract in suit and applied to the contract facts found in the Maryland and Aetna policies to determine the effect of the Continental policy language, thus relying on facts extrinsic to the Continental policy. The argument is without merit. As discussed earlier, the court was required to interpret the pertinent provisions of the three contracts in issue in order to determine the applicability of the defense of Continental that the plaintiff's claim was specifically insured under the Aetna and Maryland policies. *Libero* v. *Lumbermens Mutual Casualty Co.,* supra; *Spurr's Appeal,* 116 Conn. 108, 111, 163 A. 608 (1933); *Mills* v. *Roto Co.,* 104 Conn. 645, 647, 133 A. 913 (1926). By accepting Continental's policy, the plaintiff inferentially agreed to the possible existence of other policies which excluded payment by Continental of liability for claims specifically covered by such other policies of insurance.

In sum, we find no error in the action of the trial court in directing a verdict in favor of the defendant Continental Casualty Company.

There is no error.

In this opinion the other judges concurred.