[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFFS'MOTION FOR SUMMARY JUDGMENT (#142)
In this case the plaintiffs, Providence Washington Insurance Company ("Providence Washington"), and its agent, Philadelphia Insurance Company ("Philadelphia Insurance"), have filed a two-count declaratory judgment action alleging the following facts. CT Page 6882
On September 26, 1990, while Colleen A. O'Connor was operating a vehicle which she had leased or rented from the owner, Advance Auto Rental Inc. ("Advance"), her vehicle collided with a guard rail and injured Irene Lanziero and Susan D. Ferraro, who were passengers in O'Connor's vehicle. As a result of this collision, Lanziero filed a civil action against O'Connor, and Ferraro instituted an action against Advance and O'Connor. The plaintiffs in the instant action allege that the "parties to said actions have made demand upon the plaintiffs for automobile liability coverage" under two insurance policies that had been issued to Advance by Providence Washington. These two policies were a commercial auto coverage policy and an excess rental liability policy, each effective June 1, 1990 to June 1, 1991. The plaintiffs allege, however, that these policies were cancelled as of September 26, 1990 at 12:01 a.m., when Winston Hill Assurance Company, Ltd. ("Winston Hill"), issued an insurance binder extending automobile liability insurance to Advance, effective September 26, 1990 at 12:01 a.m., and expiring on January 1, 1991 at 12:00 noon.
Named as defendants in this action are Lanziero, Ferraro, O'Connor, Advance, North American Brokerage Services, Inc. of Pittsburgh, Pa. (North American of Pittsburgh), National Alliance Brokerage Services, Inc. (National Alliance), and North American Brokerage Services, Inc. of Missouri (North American of Missouri). The insurance binder issued on September 26, 1990 is alleged to have been issued by Winston Hill through its subagent North American of Pittsburgh, as agent of North American of Missouri as agent of Winston Hill.
In the first count the plaintiffs are seeking a declaratory judgment determining the rights, obligations and liabilities of the parties with respect to the two insurance policies, maintaining that they have no duty to defend O'Connor and Advance, and no obligation to pay any damages found as against O'Connor and Advance in the two pending lawsuits.
In Count Two the plaintiffs allege that they "are holding sums representing premiums paid on said policies by defendant Advance," and they seek a judicial determination with respect to "the rights, obligations and liabilities" that exist between the plaintiffs and Advance "concerning said premiums."
Subsequent to the filing of their amended complaint, the plaintiffs filed several motions for default for failure to appear and failure to plead. O'Connor and Advance were both defaulted on CT Page 6883 October 27, 1993, O'Connor for failure to appear, and Advance for failure to plead. North American Services, Inc. of Missouri was defaulted for failure to appear on December 6, 1993. Accordingly, it appears from the court file that the remaining defendants in this action are Lanziero, Ferraro, National Alliance and North American of Pittsburgh.
On December 15, 1993, the plaintiffs filed a motion for summary judgment claiming that the Providence Washington policies terminated prior to the accident by virtue of the policies' provisions and the doctrine of cancellation by substitution. In support of their motion, the plaintiffs attached several affidavits, copies of the subject policies, a copy of the police report on the accident, and documents captioned "IN RE: Petition of NORWOOD ROLLE, Liquidator of the Estate of WINSTON HILL ASSURANCE COMPANY, LTD.[,] Debtor in Foreign Proceedings."
Lanziero has filed a memorandum in opposition to plaintiffs' motion, arguing that the alleged automatic termination language in the providence Washington policies is ambiguous. National Alliance has filed two memoranda in opposition with an affidavit maintaining that there is a question of fact as to its involvement in this case. Ferraro and North American of Pittsburgh have filed nothing in opposition to the motion for summary judgment.
"In deciding a motion for summary judgment, the trial court is limited to considering the pleadings, affidavits and other documentary proof submitted by the parties." (Citation omitted).Orticelli v. Powers, 197 Conn. 9, 15, 495 A.2d 1023 (1985). Summary judgment "`shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" (Citations omitted.)Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573, 578,573 A.2d 699 (1990).
"`[T]he party seeking summary judgment has the burden of showing the nonexistence of any material fact."' (Citations omitted.) Connell v. Colwell, 214 Conn. 242, 246, 571 A.2d 116
(1990). "`[A] party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue.'" (Citations omitted.) Id., 246.
The relevant language of the subject insurance policies is as CT Page 6884 follows.
The Winston Hill insurance binder provides, in part, that: "THIS BINDER IS A TEMPORARY INSURANCE CONTRACT, SUBJECT TO THE CONDITIONS SHOWN ON THE REVERSE SIDE OF THIS FORM." The effective date of the binder is September 26, 1990 at 12:01, and the expiration date is January 26, 1991.
As indicated previously, Providence Washington had issued a commercial auto coverage policy, policy no. 324865PR, to Advance, with the policy period extending from June 1, 1990 to June 1, 1991.
Concerning the "OTHER INSURANCE, " provisions, subsection (a), in pertinent part, states that "[f]or any covered `auto' you own, this Coverage Form provides primary insurance. . . ." Subsection (b) provides that "[r]egardless of the provisions of paragraph a above, this Coverage Form's Liability Coverage is primary for any liability assumed under an `insured contract.'" In relevant part, subsection (c) adds that "[w]hen this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share."
This policy also contains art endorsement entitled "CONNECTICUT CHANGES-CANCELLATION AND NONRENEWAL," which includes two subheadings, "CANCELLATION," and "NONRENEWAL."
The "CANCELLATION" section is preceded by the following statement: "A. The Cancellation Common Policy Condition is replaced by the following. . . ." The rights and obligations of the insurer and the insured with respect to cancellation are then enumerated.
The "NONRENEWAL" section is preceded by the following statement: "B. The following is added and supersedes any other provision to the contrary." This section sets forth the insurer's obligations to notify the insured should the insurer decide not to renew the policy. In pertinent part, this section provides that:
 4. With respect to automobile liability insurance policies only, your policy shall terminate on the effective date of any other insurance policy you purchase with respect to any automobile designated in both policies.
Providence Washington had also issued an excess rental liability policy, policy No. 327049EX, to Advance which extended CT Page 6885 from June 1, 1990 to June 1, 1991. This policy also contains an endorsement entitled "CHANGES IN POLICY — CANCELLATION." The endorsement provides that "CANCELLATION of the Rental Liability Policy is deleted in its entirety and replaced with the following[,]" followed by three subsections, "CANCELLATION," "NONRENEWAL," and "MAILING OF NOTICES."
The "NON-RENEWAL" section provides, in pertinent part, that:
11a. NON-RENEWAL
 2. If the Company fails to mail proper notice of non-renewal and the Named Insured obtains other insurance, this policy will end on the effective date of that insurance.
The next section is entitled "MAILING OF NOTICES, " and it provides in relevant part:
11b. MAILING OF NOTICES
 2. Until the Company issues a proper nonrenewal or cancellation notice that complies with applicable law, insurance coverage will remain in effect. However, if the Named Insured obtains replacement coverage, the Company's obligation to continue coverage hereunder shall cease.
The plaintiffs argue that the provisions in the policies, and the doctrine of cancellation by substitution, demonstrate that the Providence Washington policies terminated prior to the time of the accident, which, according to the documentary evidence, occurred at 1:01 A.M. on September 26, 1990. The plaintiffs further contend that "[s]hould there be any remaining question as to cancellation of the Providence Washington policies effective at 12:01 A.M. on September 26, 1990, plaintiffs call the Court's attention to the fact that all appearing parties except Irene Lanziero have admitted [para.] 8 of the plaintiffs' Requests for Admission dated April 7, 1993, to that effect."
Lanziero maintains that the language of the policies does not mandate coverage termination when a binder is procured to extend coverage. Lanziero argues that the "alleged termination language in the Providence policies is ambiguous and open to more than one CT Page 6886 interpretation." She contends that "[a]mbiguities in insurance contracts, which are contracts of adhesion, are to be construed in favor of coverage. Nevertheless any determination as to the ambiguity in the contracts involves a question of intent." She concludes that "[s]uch questions of fact should not be decided by this court on plaintiffs' motion for summary judgment[,]" and that the "meaning of the policies' provisions should be submitted to the trier of fact." National Alliance claims that it has no connection to this case, that the plaintiff has confused it with another company, and therefore there is a question of fact as to National Alliance's involvement in this case which should prevent the motion for summary judgment from being granted as to that defendant.
The position of the plaintiffs is that the express provisions of the two policies are clear and unambiguous. Both policies contain a provision that coverage terminates when the insured obtains other insurance coverage. The insured, Advance Auto, did obtain other coverage effective at 12:01 A.M. on September 26, 1990 by way of a binder from Winston Hill which was acting as the agent for North American. Therefore, the plaintiffs claim that pursuant to the provisions of the policies, their two policies were cancelled as of 12:01 A.M. on September 26, 1990 which was prior to the accident in question. In support of their claim that their policies terminated by virtue of the doctrine of cancellation by substitution, they cite Taxter v. Safeco Insurance Co., 721 P.2d 972
(Wash.App. 1986), and Johnston v. American Employers Ins. Co.,25 Conn. App. 95 (1991).
In her opposition to the motion for summary judgment, Lanziero points out that the termination of coverage provision upon the purchase of other insurance relied upon by the plaintiffs does not mention insurance obtained by way of a binder. The issuance of binders pending the issuance of an actual policy is permitted by General Statutes § 38a-340 and clearly satisfies the provisions of the policies as far as being another insurance policy. Lanziero also points to other provisions of the policies which she claims makes the policies ambiguous and, therefore, that summary judgment is inappropriate.
"`A contract is to be construed as a whole and all relevant provisions will be considered together.'" Barnard v. Barnard,214 Conn. 99, 109, 570 A.2d 690 (1990), quoting Lar-Rob Bus Corporationv. Fairfield 170 Conn. 397, 407, 365 A.2d 1086 (1976). See also,Hatcho Corporation v. Della Pietra, 195 Conn. 18, 23, 485 A.2d 1285
(1985). "It is the function of the court to construe the CT Page 6887 provisions of the contract of insurance." Gottesman v. Aetna Ins.Co., 177 Conn. 631, 634, 418 A.2d 944 (1979). "`An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy.'" Stephan v. Pennsylvania General Ins.,224 Conn. 758, 763, 621 A.2d 258 (1993), quoting Schultz v.Hartford Fire Ins. Co., 213 Conn. 696, 702, 569 A.2d 1131 (1990). The policy words must be given their natural and ordinary meaning.Hammer v. Lumbermen's Mutual Casualty Co., supra, 583.
 If the words are plain and unambiguous, they must be given their ordinary and natural meaning, and we do not force, ignore or distort provisions so as to give them a different meaning from how they were evidently intended by the parties.
* * *
 We will not torture language to find an ambiguity that the ordinary meaning does not disclose however, and simply because the parties contend for different meanings does no necessitate a conclusion that the language is ambiguous.
(Citations omitted; internal quotation marks omitted.) Aetna Life Casualty Co. v. Bulaong, 218 Conn. 51, 60 (1991).
"Under well established rules of construction, any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy."Stephan v. Pennsylvania General Ins., supra, citing Streitweiser v.Middlesex Mutual Assurance Co., 219 Conn. 371, 375, 593 A.2d 498
(1991); see also Beach v. Middlesex Mutual Assurance Co., 205 Conn. 246,250, 532 A.2d 1297 (1987). "This rule of construction may not be applied, however, unless the policy terms are indeed ambiguous." Id., citing Kelley v. Figuieredo, supra, 37. "Moreover, the mere fact that the parties advance different interpretations of the language in question `does not necessitate a conclusion that the language is ambiguous.'" Stephen v. Pennsylvania General Ins., supra (1993); see also Aetna Life Casualty Co. v. Bulaong, supra.
The only question of fact relevant to this motion about which CT Page 6888 there is a genuine issue has to do with the claim of National Alliance that it is not the successor corporation to North American, has no involvement or connection to this case or the insurance policies in question, and therefore that no declaration of rights and liabilities should be made as to National Alliance. In support of this factual claim National Alliance has filed the affidavit of Daniel F. Loughlin, Secretary of National Alliance. This affidavit clearly raises a question of fact with respect to whether National Alliance has any connection or involvement in this case.
It is not clear to the court why National Alliance, which claims that it has no connection to this case and presumably is not making any claims under the two insurance policies referred to, is concerned about a finding that it has no right to assert any claims under those two policies. However, since National Alliance takes the position that it does not want any court declaration of rights and liabilities made as to it and has raised a genuine issue of material fact as to its involvement, the motion for summary judgment must be denied as to the defendant National Alliance. It would seem to the court that since National Alliance has asserted that it is not making any claims under the two insurance policies, that the plaintiffs should consider withdrawing this case as against National Alliance.
With respect to all other defendants in this case, it is clear that there is no genuine issue as to any material fact. It is the function of the court to construe the relevant section of the two insurance policies in question. In the opinion of the court the policies are not ambiguous. Each policy specifically provides that coverage terminates if the insured obtains other insurance coverage. The insured Advance did obtain other insurance coverage by way of a binder which was effective at 12:01 A.M. on September 20, 1990, and the policies issued by the plaintiffs terminated at that point. Therefore, the plaintiffs have no obligation under the two policies to defend or pay any claims arising out of the accident which occurred at 1:01 A.M. on September 20, 1990.
The second count involves a determination as to the amount of unearned premium which the plaintiffs concede should be returned to Advance as a result of the termination of the policies. Each policy was issued for the period from June 1, 1990 to June 1, 1991, but both were terminated as of September 20, 1990. The plaintiffs have established, by way of the affidavit of Jack T. Carballo, that the unearned premium which is due to Advance is $9,032.12. There CT Page 6889 is no genuine issue of fact with respect to this sum.
Accordingly, for the reasons above stated, the motion of the plaintiffs for summary judgment is granted as against all defendants except National Alliance Brokerage Services, Inc. A judgment may enter as against all defendants except National Alliance Brokerage Services, Inc., as follows:
On the first count:
1. Judgment declaring that the defendants have no right to assert any claims under policies numbered 324865PR and 327049EX issued by Providence Washington Insurance Company to Advance Auto Rental.
2. Judgment declaring that the plaintiffs have no duty to defend Colleen A. O'Connor and Advance Auto Rental Inc. against claims of Irene Lanziero and Susan D. Ferraro arising out of the motor vehicle collision on September 26, 1990.
3. A temporary and permanent injunction restraining the defendants from asserting any claims under policies numbered 324865PR and 327049EX issued by Providence Washington Insurance Company to Advance Auto Rental Inc., or commencing any other civil action against the plaintiffs arising out of the motor vehicle collision on September 26, 1990, pending disposition of this case.
On the second count:
A judgment that the plaintiffs are obligated to the defendant Advance Auto Rental, Inc., for unearned premiums paid on policies numbered 324865PR and 327049EX issued by Providence Washington Insurance Company to Advance Auto Rental, Inc. in the amount of $9,032.12.
Hadden, J.