[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT
The plaintiffs, Carol Thompson, Stanley Thompson and Transducer Products, Inc., initiated this declaratory judgment action against the defendants, Merchant's Mutual Insurance Company, Peerless Insurance Company, Lumber Mutual Insurance Company, and National Grange Mutual Insurance Company, to determine whether the general comprehensive liability insurance provided by these CT Page 1566 companies covers two underlying lawsuits brought against the plaintiffs. The plaintiffs allege injuries as the result of a determination by the Commissioner of Environmental Protection [Commissioner] that the plaintiffs contributed to pollution found in neighboring wells, and also claim the defendants have a duty to defend two lawsuits brought against the plaintiffs, one brought by the Commissioner and one relating to pollution found on neighboring properties. The defendant Lumber Mutual Insurance Company [Lumber Mutual] now seeks summary judgment on the basis of an absolute pollution exclusion in its policy.
The plaintiffs filed an eight count amended complaint against the four defendants The first four counts are brought on behalf of Carol Thompson and Stanley Thompson, the final four counts on behalf of Transducer Products, Inc. Counts four and eight are directed to the defendant Lumber Mutual and are the only counts relevant to this summary judgment motion. These counts allege that Carol and Stanley Thompson, d/b/a Transducer Products, Inc, have been engaged in ceramic transducer manufacturing activities at a location in the town of Goshen, Connecticut. Carol and Stanley Thompson are principals of Transducer Products, Inc. The defendant Lumber Mutual, also known as Seaco Insurance of the Lumber Insurance Companies, sold to the plaintiffs comprehensive general liability policies that were effective from January 9, 1987 through January 9, 1988. In December 1991, the plaintiffs by letter notified the defendant that the Connecticut Department of Environmental Protection had recently informed the plaintiffs that it was a suspected source of pollution in area wells neighboring the plaintiffs' plant. The plaintiffs allege that this writing satisfied all conditions precedent to filing a claim under their policy, but in January 1992 they were informed that the defendant denied coverage for any pollution for which it might be liable.
The plaintiffs also allege that the Commissioner determined that the plaintiffs contributed to the pollution in neighboring wells, and that the plaintiffs entered into consent orders with the State of Connecticut, thereby incurring substantial costs. Two CT Page 1567 lawsuits also have been brought against them, one by the Commissioner to recover costs in investigating, controlling and abating the plaintiffs' alleged violations of state law, and one by Robert and Deborah Valentine for alleged pollution on their property in Litchfield, Connecticut. The plaintiffs claim they are entitled to defense and indemnification under their insurance policies.
The defendant Lumber Mutual has not filed an answer to the amended complaint.[1] It now moves for summary judgment on the basis of an absolute pollution exclusion in its policy. Attached to its motion for summary judgment is a memorandum of law, an affidavit, and other documentation. The plaintiffs have filed two memoranda in opposition supported by affidavits and other documentation.
"Summary judgment procedure, generally speaking, is an attempt to dispose of cases in a manner which is speedier and less expensive for all concerned than a full-dress trial. Orenstein v. Old Buckingham Corp.,205 Conn. 572, 574, 534 A.2d 1172 (1987). "Practice Book § 384 provides that `summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Water Way Propertiesv. Colt's Mfg. Co., 230 Conn. 660, 664, ___ A.2d ___ (1994). "The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." Suarezv. Dickmont Plastics Corp., 229 Conn. 99, 105,639 A.2d 507 (1994). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." Water WayProperties v. Colt's Mfg. Co., supra, 664. "The test is whether a party would be entitled to a directed verdict on the same facts." Haesche v. Kissner, 229 Conn. 213,217, ___ A.2d ___ (1994). CT Page 1568
The defendant Lumber Mutual moves for summary judgment on the basis of an absolute pollution exclusion in the insurance policy. The defendant argues that this exclusion bars and excludes coverage for the underlying claims alleged in the amended complaint. The defendant contends that the underlying claims allege damages arising out of the discharge release or escape of pollutants from premises owned and occupied by the plaintiff. Such claims, the defendant asserts, are explicitly excluded from coverage by the policy according to the absolute pollution exclusion. Moreover, the defendant argues that the Connecticut Supreme Court's decision in Heyman Associates No. 1 v. Insurance Co. ofPennsylvania, 231 Conn. 756, ___ A.2d ___ (1995) supports its contention.
The plaintiffs argue that genuine issues of material fact exist precluding summary judgment. The plaintiffs argue that specific exclusion on which the defendant relies was never brought to their attention by the defendant or its agent. Instead the exclusion's language was combined with many pages of material, making it difficult for the plaintiffs to see which exclusions apply. The plaintiffs assert that it was a reasonable expectation on their part that coverage would be provided for inadvertent and unintentional operations that result in pollution to their own or other's property. Additionally, the plaintiffs argue that the defendant Lumber Mutual entered an appearance in one of the underlying lawsuits, indicating that the defendant recognized a duty to defend. Finally, the plaintiffs rely on the declaration page of the policy and argue that the claimed absolute policy exclusion is listed on that page under the building and personal property coverage of the insured, but not under liability coverage. The plaintiffs contend that this page shows that the absolute pollution exclusion applies only to the building and personal property coverage of the insured and not to the liability coverage, so that the exclusion does not apply to the underlying claims.
"The duty to defend means that the insurer will defend the suit, if the injured party states a claim, which, qua claim, is for an injury `covered' by the policy; it is the claim which determines the insurer's CT Page 1569 duty to defend." (Internal quotation marks omitted.)Alderman v. Hanover Ins. Group, 169 Conn. 603, 610,363 A.2d 1102 (1975). "The duty to defend has a broader aspect than the duty to indemnify and does not depend on whether the injured party will prevail against the insured." Missionaries of the Co. of Mary. Inc. v. AetnaCasualty Surety Co., 155 Conn. 104, 110, 230 A.2d 21
(1967). "`An insurer may not refuse the tendered defense of an action unless a comparison of the policy with the underlying complaint shows on its face that there is no potential for coverage. . . . In making the comparison any ambiguous or equivocal expressions in the policy will be strictly construed against the insurer.'" Clinton v.Aetna Life Surety Co., 41 Conn. Sup. 560, 563,594 A.2d 1046 (1991, Satter, J.). Nevertheless, "`[i]t is axiomatic that no insurer is bound to provide indemnification or defense beyond the scope of coverage described in the insurance contract, the policy.'" St.Paul Fire Marine Ins. Co. v. Shernow, 22 Conn. App. 377,381, 577 A.2d 1093 (1990). "Where there is no potential of liability under a policy exclusion, there is no duty to defend." (Citations omitted.) HeymanAssociates No. 1 v. Insurance Co. of Pennsylvania,8 Conn. L. Rptr. 440 (February 24, 1993, Dunn, J.), aff'd,231 Conn. 756, ___ A.2d ___ (1995).
In Heyman Associates No. 1 v. Insurance Co. ofPennsylvania, supra, the Connecticut Supreme Court held an absolute pollution exclusion similar to the one in this case to be clear and unambiguous. The court affirmed the trial court's granting of summary judgment on the basis of that absolute pollution exclusion. The court noted that because the defendants owed no duty to indemnify under such an exclusion, they also owed "no duty to defend the plaintiff from claims arising from those damages." Id., 769 n. 17.
In this case, under the clear and unambiguous language of the absolute policy exclusion, the defendant owes no duty to indemnify the plaintiffs for damages arising from the alleged pollution, and also owes no duty to defend claims arising from that pollution. The absolute pollution exclusion specifically provides that the insurance does not apply to: CT Page 1570
 (1) to bodily injury or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants:
 (a) at or from premises owned, rented or occupied by the named insured. . . .
 (2) to any loss, cost or expense arising out of any governmental direction or request that the named insured test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize pollutants.
The underlying claims that are alleged in the plaintiff's complaint fall within this policy exclusion. The claim for costs incurred due to compliance with consent orders entered into with the state falls within the exclusion for "(2). . . any loss, cost, or expense arising out of any governmental direction or request that the named insured test for, monitor, clean-up, remove, contain, treat, detoxify or neutralize pollutants." The claims brought by the Commissioner for costs incurred are also explicitly excluded under this provision. Additionally, the claims brought by the Valentines' are explicitly excluded under the exclusion: "(1) to bodily or property damage arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants: (a) at or from premises owned, rented or occupied by the named insured." The claims in the Valentines' underlying complaint clearly implicate this policy exclusion. The bodily and property damage complained of in the four counts of that complaint clearly relate to pollutants allegedly discharged from the plaintiffs' premises. The exclusion explicitly provides that there is no insurance coverage for the plaintiffs' claims and, therefore, there is no duty to indemnify or defend under the clear and unambiguous terms of the policy.
The affidavits submitted by the plaintiff are insufficient to raise a genuine issue of material fact. The affidavits state that the plaintiff Carol Thompson had no discussion with her insurance agent concerning the exclusion of any environmental hazards. Additionally, the Thompson's insurance agent states that she never discussed environmental pollution exclusions in the policies, and she never was asked to communicate such exclusions to her customers. The plaintiffs, though, have made no allegations of fraud or misrepresentation on the part of the defendants. These affidavits fail to contradict the clear and unambiguous terms of the plaintiffs' insurance policy and, therefore, do not raise a CT Page 1571 genuine issue of material fact.
The plaintiffs' final argument concerning the declaration page of the policy also fails to raise a genuine issue of material fact. The plaintiffs argue that the section of the declaration page listing forms and endorsements made part of the policy lists the form containing the absolute pollution exclusion under the first section of the policy, which provides coverage to buildings and personal property of the insured.[2] The second section of the policy provides liability coverage, and the plaintiff argues that since the form containing the absolute pollution exclusion is not listed after this section, it does not apply to this section. Therefore, the plaintiffs contend that the declaration page raises an issue of fact of whether the absolute pollution exclusion applies to liability section of the policy, and thus, whether it applies in this case.
A reading of the absolute pollution exclusion, however, clearly indicates where in the policy this exclusion is to apply. The exclusion states:
 It is agreed that the exclusion relating to the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants is replaced by the following. . . .
(Emphasis added). The exclusion then states its provisions, which are noted above. The absolute pollution exclusion, thus, explicitly provides that it replaces another specific exclusion. The replaced exclusion is part of the second section of the policy, which provides liability coverage. The terms of the pollution exclusion do not limit its applicability to the property damage section of the policy, and they do not exclude it from the liability section of the policy. In fact, by its own terms the absolute pollution exclusion replaces an exclusion that is found in the bodily injury liability and property damage liability section of the policy. The absolute pollution exclusion, therefore, clearly applies to that section of the policy. The fact that the declarations page lists the exclusion's form number following the first section of the policy has no bearing on the explicit language of the exclusion providing where it applies. The exclusion clearly applies to the second section of the policy since it replaces a former exclusion under that section. The plaintiffs, therefore, CT Page 1572 have failed to raise a genuine issue of material fact.
One treatise has noted the reasoning for replacing and redrafting pollution exclusions:
 As a result of dissatisfaction with the judicial constructions given to the standard pollution exclusion and the enormous expense and exposure resulting from the explosion in environmental litigation, insurers have issued redrafted pollution exclusion clauses that eliminate the exception for "sudden and accidental" pollution. These new exclusions, referred to as absolute pollution exclusions, are considered clear, unambiguous, and enforceable. They exclude coverage both for liability arising out of the discharge of pollutants and for pollution cleanup expenses. They exclude coverage regardless of whether the damages were expected or intended.
7A Appleman, Insurance Law and Practice, Sec. 4525 (1994). In this case, the defendant Lumber has replaced its former pollution exclusion with a new absolute pollution exclusion. This absolute pollution exclusion is clear and unambiguous. Coverage for the underlying claims is not provided, and therefore the defendant Lumber is entitled to summary judgment on the fourth and eighth counts of the amended complaint.
For these reasons, the defendant Lumber Mutual Insurance Company's motion for summary judgment is granted.
PICKET, J.